41 A.3d 764 (2012)
425 N.J. Super. 375
STATE of New Jersey, Plaintiff-Appellant/Cross-Respondent,
v.
Brian RICE, Defendant-Respondent/Cross-Appellant.
Docket No. A-3777-09T4
Superior Court of New Jersey, Appellate Division.
Submitted January 10, 2012.
Decided April 16, 2012.
*765 Carolyn A. Murray, Acting Essex County Prosecutor, attorney for appellant/cross-respondent (Lucille M. Rosano, Special *766 Deputy Attorney General/Assistant Prosecutor, of counsel and on the brief).
Joseph E. Krakora, Public Defender, attorney for respondent/cross-appellant (Michele A. Adubato, Designated Counsel, on the brief).
Before Judges MESSANO, YANNOTTI and ESPINOSA.
The opinion of the court was delivered by
MESSANO, P.J.A.D.
Following a jury trial, defendant Brian Rice, an Irvington police officer, was convicted of second-degree conspiracy to commit official misconduct, N.J.S.A. 2C:5-2 and 2C:30-2 (count one); second-degree official misconduct, N.J.S.A. 2C:30-2 (count two); and fourth-degree tampering with physical evidence, N.J.S.A. 2C:28-6(1) (count three).[1] The judge merged count one into count two, sentenced defendant as a third-degree offender pursuant to N.J.S.A. 2C:44-1(f)(2), and imposed a custodial sentence of three years with a three-year period of parole ineligibility pursuant to N.J.S.A. 2C:43-6.5(a). The judge sentenced defendant to a concurrent nine-month term on count three.
The State filed an appeal of the sentence, and defendant sought leave to file his cross-appeal as within time, which we administratively granted. The State raises the following point on appeal:
THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED DEFENDANT ONE DEGREE LOWER PURSUANT TO N.J.S.A. 2C:44-1(f)(2)
Defendant raises the following points in his cross-appeal:
POINT I
THE REFERENCES TO STATEMENTS PROVIDED TO THE INTERNAL AFFAIRS DEPARTMENT BY THE PARTIES INVOLVED IN THE INCIDENT VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT AGAINST SELF-INCRIMINATION. (Not raised below)
POINT II
THE TRIAL COURT'S INSTRUCTIONS TO THE JURY WAS [SIC] INSUFFICIENT AND INADEQUATE AND DEPRIVED DEFENDANT OF A FAIR TRIAL (Not raised below)
A. FAILURE TO CHARGE REGARDING THE PROPER EVALUATION OF DEFENDANT'S ORAL STATEMENTS
B. FAILURE TO GIVE A LIMITING INSTRUCTION REGARDING UNCHARGED CRIMINAL CONDUCT
C. FAILURE TO ADEQUATELY INSTRUCT THE JURY ON THE CHARGE OF OFFICIAL MISCONDUCT
POINT III
THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH DEFENDANT'S CONVICTIONS FOR CONSPIRACY AND OFFICIAL MISCONDUCT[] BEYOND A REASONABLE DOUBT[2]
We have considered these arguments in light of the record and applicable legal standards. We affirm defendant's convictions for official misconduct and tampering *767 with physical evidence, reverse his conviction for conspiracy and remand the matter to the trial judge for further consideration of the sentence imposed.
[At the court's direction, Sections I through IV of its opinion, which concern discrete issues, have been redacted from the published opinion because they do not meet the criteria set by R. 1:36-2(d) for publication. The published parts of the opinion continue as follows.]

V.
The State argues that the judge erred by sentencing defendant as a third-degree offender pursuant to N.J.S.A. 2C:44-1(f)(2). That statute provides that when a defendant is convicted of a first- or second-degree crime, and "the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted." Ibid. (emphasis added).
The State further argues that the judge mistakenly exercised his discretion by imposing a three-year period of parole ineligibility because a five-year period of parole ineligibility was mandatory pursuant to N.J.S.A. 2C:43-6.5(a). That statute provides:
[E]xcept as otherwise provided in subsection c. of this section, a person who serves ... as a public officer or employee under the government of this State, or any political subdivision thereof, who is convicted of a crime that involves or touches such office or employment as set forth in subsection b. of this section, shall be sentenced to a mandatory minimum term of imprisonment without eligibility for parole as follows: ... for a crime of the second degree, five years....
[Ibid.]
Official misconduct is a crime listed in subsection (b). N.J.S.A. 2C:43-6.5(b)(17). Therefore, the State contends the appropriate sentence should have been, at a minimum, five years' imprisonment with a five-year period of parole ineligibility.
However, N.J.S.A. 2C:43-6.5(c)(2) provides that "[i]f the court finds by clear and convincing evidence that extraordinary circumstances exist such that imposition of a mandatory minimum term would be a serious injustice which overrides the need to deter such conduct in others, the court may waive or reduce the mandatory minimum term of imprisonment required." (Emphasis added). "In making any such finding, the court must state with specificity its reasons for waiving or reducing the mandatory minimum sentence that would otherwise apply." Ibid.
At sentencing, defendant requested that the judge not impose any period of parole ineligibility pursuant to N.J.S.A. 2C:43-6.5(c)(2). The judge found aggravating factors three (the risk defendant would commit another offense); four ("[a] lesser sentence will depreciate the seriousness of the defendant's offense because it involved a breach of the public trust"); nine (the need to deter); and ten ("[t]he offense involved fraudulent or deceptive practices committed against any department or division of State government"). See N.J.S.A. 2C:44-1(a)(3), (4), (9) and (10). The judge also found mitigating factors seven (lack of prior record); and eight (defendant's conduct was the result of circumstances unlikely to recur). See N.J.S.A. 2C:44-1(b)(7) and (8). On the judgment of conviction, the judge listed mitigating factor "[fourteen]""the reasons expressed on the record." Although our sentencing statute lists only thirteen mitigating factors, *768 we have recognized the court's ability to use non-statutory mitigating factors in imposing a sentence. See State v. Ross, 335 N.J.Super. 536, 543, 763 A.2d 281 (App.Div.2000), certif. denied, 167 N.J. 637, 772 A.2d 939 (2001). We presume the judge was referencing statements he made at the time of sentencing regarding defendant's character and the high regard in which he was held by the community and his co-workers, as evidenced by numerous letters sent to the court.[3]
The State initially contends that mitigating factors seven and eight were not supported by the record. As to factor seven, the State argues that since 2000 and before the charges in this case, defendant had been arrested for aggravated assault and terroristic threats. After the events for which he was indicted, defendant was charged with aggravated assault as a bias crime. No convictions resulted.
Adult arrests that do not result in convictions may be "relevant to the character of the sentence ... imposed." See State v. Tanksley, 245 N.J.Super. 390, 397, 585 A.2d 973 (App.Div.1991). A sentencing court, therefore, does not abuse its discretion by refusing to find mitigating factor seven based upon on charges that did not result in convictions. State v. Torres, 313 N.J.Super. 129, 162, 713 A.2d 1 (App.Div.), certif. denied, 156 N.J. 425, 719 A.2d 1023 (1998). However, the State has cited no reported decision holding the converse, i.e., that the judge may not find mitigating factor seven because of arrests not resulting in convictions. The judge did not mistakenly find mitigating factor seven.
Mitigating factors eight and nine, N.J.S.A. 2C:44-1(b)(8) and (9), relate to aggravating factor three. State v. Towey, 244 N.J.Super. 582, 593, 583 A.2d 352 (App.Div.) certif. denied, 122 N.J. 159, 584 A.2d 226 (1990). The judge expressly determined that aggravating factor three applied because defendant did "not tell[] the truth" when testifying before the jury, lacked any remorse and took no responsibility for his actions. However, he did not place "great weight on the aggravating factor." The judge rejected mitigating factor nine for the same reasons. See State v. O'Donnell, 117 N.J. 210, 216-17, 564 A.2d 1202 (1989) (mitigating factor nine did not apply when the defendant police officer lacked any remorse over the beating of a suspect).
As to mitigating factor eight, the judge reasoned the circumstances were unlikely to reoccur because defendant was "not [going to] be a police officer anymore, so he's not [going to] have the opportunity to do what he did." In his weighing process, the judge stated, "I place great weight on the fact that the results will never happen again. The circumstances are just not happening any more. I give that great weight." The State contends there was no support for mitigating factor eight simply because defendant was required to forfeit his position as a police officer. In State v. Lake, 408 N.J.Super. 313, 329, 974 A.2d 1115 (App.Div.2009), without regard to a specific mitigating factor, we said it was of "no significance ... that [the] defendant was required to forfeit his public office" because forfeiture was "a statutory consequence of his criminal conduct that was imposed upon him." However, our comment in Lake was made in the context of consideration of the "interest of justice" standard contained in N.J.S.A. 2C:44-1(f)(2). We cannot conclude that the judge erred in finding mitigating factor eight.
*769 We also conclude that the judge did not mistakenly exercise his discretion in weighing the sentencing factors and concluding that the "mitigating factors substantially outweigh[ed] the aggravating factors." He gave "great weight" to mitigating factor eight and "paramount weight, crushing weight, overwhelming weight to [defendant's] record of service as evidenced in the letters" he received. The judge noted defendant's "bravery[,] ... heroism and his reliability and assisting other officers."
We turn then to the crux of the State's appeal. After weighing the sentencing factors, referring to N.J.S.A. 2C:43-6.5(c)(2) and "the full wrath of th[at] law" which required a minimum sentence of "[five] with a [five]," the judge stated:
The mitigating factors ... not only bring it down to the third[-]degree range, but go further. Those letters ... which [I] received [are] the clear evidence that leads me to believeclear and convincing thatit would be a serious [in]justice that outweighs the need to deter conduct from others.
The judge continued by stating he had "already made the finding under [N.J.S.A.]2C:43-6," and he was "clearly convinced that the mitigating factors substantially outweigh[ed] the aggravating factors and the interest[s] of justice demand that [defendant] be sentenced one degree lower than the second[-]degree crime for which he was convicted." He sentenced defendant to three years with a three-year period of parole ineligibility.
The downgrade provisions of N.J.S.A. 2C:44-1(f)(2) have been extensively construed and interpreted by case law. However, no reported case has construed N.J.S.A. 2C:43-6.5(c)(2) since its enactment in 2007. See L. 2007, c. 49, § 10. We conclude the exercise of the court's sentencing discretion under the two statutes is guided by different standards. Because the judge essentially concluded the two statutes imposed the same standard, we are compelled to remand the matter for reconsideration of defendant's sentence.
Under N.J.S.A. 2C:44-1(f)(2), when the court considers imposing a sentence one degree lower than the crime for which a defendant has been convicted, it must apply a two-step process. The judge "must be clearly convinced that the mitigating factors substantially outweigh the aggravating ones and that the interest of justice demands a downgraded sentence." State v. L.V., 410 N.J.Super. 90, 109, 979 A.2d 821 (App.Div.2009) (quoting State v. Megargel, 143 N.J. 484, 496, 673 A.2d 259 (1996)) (internal quotation marks omitted), certif. denied, 201 N.J. 156, 988 A.2d 1178 (2010). "[T]he standard governing downgrading is high." Megargel, supra, 143 N.J. at 500, 673 A.2d 259.
The Megargel Court identified several factors for the sentencing court to consider, including: "the degree of the crime [which] is the focus of the sentence"; whether "[t]he surrounding circumstances of an offense may make it very similar to a lower degree offense"; and "facts personal to the defendant," including his "role in the incident." Id. at 500-01, 673 A.2d 259. "The reasons justifying a downgrade must be `compelling,' and something in addition to and separate from, the mitigating factors that substantially outweigh the aggravating factors." Id. at 505, 673 A.2d 259. "[I]n those cases in which the Legislature has acted to provide an enhanced penalty for conviction of a particular offense, the downgrade of that offense requires more compelling reasons than the downgrade of an offense for which the Legislature has not attached an enhanced penalty." Id. at 502, 673 A.2d 259.
*770 "[B]ecause the focus remains on the offense and not the offender, the surrounding circumstances used as compelling reasons for a downgrade should arise from within the context of the offense itself." Lake, supra, 408 N.J.Super. at 326, 974 A.2d 1115 (emphasis added) (citing Megargel, 143 N.J. at 500-01, 673 A.2d 259). For example in L.V., supra, 410 N.J.Super. at 93, 979 A.2d 821, we held that the sentencing judge erred in refusing to sentence defendant, who pled guilty to second-degree aggravated assault and second-degree manslaughter of her two newborn children, as a third-degree offender. In particular, we noted that "[t]he circumstances surrounding [the defendant's] behavior were extreme and severe," because "[s]he had been raped by her father repeatedly for years, causing impairment of her judgment and decision-making ability." Id. at 112, 979 A.2d 821 (emphasis added).
Conversely, on the State's appeal in Lake, supra, 408 N.J.Super. at 330, 974 A.2d 1115, we reversed the judge's decision to impose a third-degree sentence on the defendant convicted of second-degree official misconduct. We noted that in justifying the downgrade, the trial judge relied upon "circumstances such as a defendant's overall character or contributions to the community [which] should not be considered under the interest of justice prong in the determination of whether or not to downgrade a sentence pursuant to N.J.S.A. 2C:44-1f(2)." Id. at 328, 974 A.2d 1115. Furthermore, in Lake, supra, 408 N.J.Super. at 330 n. 1, 974 A.2d 1115, we noted that N.J.S.A. 2C:43-6.5 imposed "enhanced punishment" for the crime of official misconduct, although we did not consider that factor because of "ex post facto implications."
In enacting N.J.S.A. 2C:43-6.5(c)(2), the Legislature adopted a standard different than the "interest of justice" utilized in the downgrade provisions of the Code. Instead, in order to "waive or reduce" the mandatory minimums required, the judge must find "extraordinary circumstances ... such that imposition of a mandatory minimum term would be a serious injustice which overrides the need to deter such conduct in others." Ibid. (emphasis added).
The Megargel Court considered the different standards"interest of justice" versus "serious injustice." Discussing N.J.S.A. 2C:44-1(d), which permits the court to waive the presumption of imprisonment for a first- or second-degree offender when "having regard to the character and condition of the defendant, it is of the opinion that his imprisonment would be a serious injustice which overrides the need to deter such conduct by others[,]" the Court noted:
The "serious injustice" standard found in N.J.S.A. 2C:44-1(d) is not the same as the "in the interest of justice" standard found in section 44-1f(2). First, the language of the two statutes is different. In N.J.S.A. 2C:44-1(d) the "character and condition of the defendant" are specifically to be considered. In section 44-1f(2), there is no reference to the defendant's character or condition. Second, the two statutes address two qualitatively different situations. N.J.S.A. 2C:44-1(d) governs imprisonment versus nonimprisonment, a more serious condition, while section 2C:44-1f(2) governs whether or not a defendant convicted of a crime should be sentenced as if convicted of a crime one degree lower.
[Megargel, supra, 143 N.J. at 499, 673 A.2d 259.]
Referencing its decision in State v. Hodge, 95 N.J. 369, 376, 471 A.2d 389 (1984), the Court concluded, "since the Code requires a high standard even for downgrading, it *771 must have contemplated an even higher standard to give confidence to the `in or out' decision." Megargel, supra, 143 N.J. at 499-500, 673 A.2d 259. "[B]ecause the `serious injustice' standard requires `truly extraordinary and unanticipated circumstances' to exist to overcome the presumption of imprisonment, a somewhat lower standard should apply to the decision to downgrade a defendant's sentence." Id. at 501, 673 A.2d 259.
In State v. Evers, 175 N.J. 355, 389, 815 A.2d 432 (2003) (citing Megargel, supra, 143 N.J. at 498-502, 673 A.2d 259), the Court said that although "[t]he downgrading of an offense is not a prerequisite to finding that the presumption of imprisonment for a first- or second-degree conviction has been overcome[,]" "the reasons offered to dispel the presumption of imprisonment must be even more compelling than those that might warrant downgrading an offense." See also Lake, supra, 408 N.J.Super. at 327, 974 A.2d 1115 (noting that "the [Megargel] Court held that the compelling reasons required to satisfy the interest of justice for a downgrade under N.J.S.A. 2C:44-1f(2) present a `somewhat lower standard' than the `truly extraordinary and unanticipated circumstances' required before a `serious injustice' may be found under N.J.S.A. 2C:44-1d") (quoting Megargel, supra, 143 N.J. at 501, 673 A.2d 259).
The Evers Court further noted that even though N.J.S.A. 2C:44-1(d) permitted consideration of "the character and condition of the defendant," words omitted by the Legislature in enacting N.J.S.A. 2C:43-6.5(c)(2), in "only one case to date, [State v. Jarbath, 114 N.J. 394, 555 A.2d 559 (1989)], has this Court had occasion to hold that the `serious injustice' standard was satisfied." Evers, supra, 175 N.J. at 389, 815 A.2d 432.[4] The Court then gave "trial courts guideposts for determining the extraordinary or extremely unusual case where the human cost of imprisoning a defendant for the sake of deterrence constitutes a serious injustice." Id. at 392, 815 A.2d 432.
In deciding whether the "character and condition" of a defendant meets the "serious injustice" standard, a trial court should determine whether there is clear and convincing evidence that there are relevant mitigating factors present to an extraordinary degree and, if so, whether cumulatively, they so greatly exceed any aggravating factors that imprisonment would constitute a serious injustice overriding the need for deterrence. We do not suggest that every mitigating factor will bear the same relevance and weight in assessing the character and condition of the defendant; it is the quality of the factor or factors and their uniqueness in the particular setting that matters.
[Id. at 393-94, 815 A.2d 432.]
"In determining the role that deterrence should play in the serious injustice standard," the court must look to the statutory scheme, i.e., the presumption of imprisonment for first and second degree crimes, the circumstances of the case and the defendant's role in the commission of the crime. Id. at 394, 815 A.2d 432.
It is the quality of the extraordinary mitigating factors taken together that must be weighed in deciding whether the "serious injustice" standard has been met. The trial court also must look at the gravity of the offense with respect to the peculiar facts of a case to determine how paramount deterrence will be in the equation.

*772 [Id. at 395, 815 A.2d 432.]
We distill, therefore, by analogy that N.J.S.A. 2C:43-6.5(c)(2) imposes a "higher standard" on the judge when deciding to reduce a period of parole ineligibility than when deciding to downgrade an offense. A decision to "waiv[e] or reduc[e] the mandatory minimum sentence that would otherwise apply" affects the actual period of imprisonment a defendant must serve before being eligible for parole. Ibid. It is more akin to the "in or out" decision made under N.J.S.A. 2C:44-1(d) than it is to deciding whether a downgrade is appropriate. The Legislature chose to use the same "serious injustice" standard in adopting N.J.S.A. 2C:43-6.5(c)(2), and we presume the Legislature to have been aware of the Court's decision in Megargel announced more than a decade before the statute was enacted. See State v. Chapland, 187 N.J. 275, 291, 901 A.2d 351 (2006) (stating that "the Legislature is presumed to be aware of the judicial construction placed on an enactment").
N.J.S.A. 2C:43-6.5 was adopted as part of a comprehensive legislative scheme that also significantly impacted the pension rights of public employees convicted of crimes and amended the forfeiture provisions of N.J.S.A. 2C:51-2. See L. 2007, c. 49, § 1 to § 10. The purpose of the law was clearly to impose significant penalties upon those public employees convicted of a crime "that involves or touches" such employment. N.J.S.A. 2C:43-6.5; see also Lake, supra, 408 N.J.Super. at 330 n. 1, 974 A.2d 1115.
Although the Legislature failed to use the words "character and condition of the defendant" when it adopted N.J.S.A. 2C:43-6.5(c)(2), we conclude it nevertheless intended that the sentencing court must engage in a similar analysis to that required by N.J.S.A. 2C:44-1(d). In other words, before waiving or reducing a mandatory minimum imposed by the statute, a judge must determine "by clear and convincing evidence" that "extraordinary circumstances exist" based upon the individual defendant before the court, and the "imposition of [the statutory] mandatory minimum term would be a serious injustice which overrides the need to deter such conduct in others." N.J.S.A. 2C:43-6.5(c)(2). Additionally, "the court must state with specificity its reasons for waiving or reducing the mandatory minimum sentence that would otherwise apply." Ibid.
The decision to waive or reduce the mandatory minimum may be made even in the absence of a downgrade. See Evers, supra, 175 N.J. at 389, 815 A.2d 432. However, the decision to waive or reduce the mandatory minimum is justified only in "the extraordinary or extremely unusual case where the human cost of imprisoning a defendant [for the statutory mandatory minimum and] for the sake of deterrence constitutes a serious injustice." See id. at 392, 815 A.2d 432. The judge may consider the circumstance of the case and the defendant's role in the commission of the crime. See id. at 394, 815 A.2d 432. But, the critical focus, as with N.J.S.A. 2C:44-1(d), is whether the "extraordinary circumstances" presented by an individual defendant outweigh the legislative determination that the need to deter others from committing certain crimes "involv[ing] or touch[ing] ... [public] office or employment" requires imposition of the statutory mandatory minimum. N.J.S.A. 2C:43-6.5(a) and (c)(2).
The decision to downgrade requires application of a different calculus. As we have already noted, the downgrade determination requires a lesser threshold. Evers, supra, 175 N.J. at 388-89, 815 A.2d 432; Lake, supra, 408 N.J.Super. at 327, *773 974 A.2d 1115. Nonetheless, "because the focus remains on the offense and not the offender, the surrounding circumstances used as compelling reasons for a downgrade should arise from within the context of the offense itself." Lake, supra, 408 N.J.Super. at 326, 974 A.2d 1115. And, most significantly, "[a] trial court should also state why sentencing the defendant to the lowest range of sentencing for the particular offense for which he was convicted, is not a more appropriate sentence than a downgraded sentence under section 44-1f(2)." Megargel, supra, 143 N.J. at 502, 673 A.2d 259.
In light of our discussion and enunciation of the different standards applicable to the sentencing schemes contained in the two statutes, we are not satisfied from the existing record that the judge clearly expressed his consideration of the distinctions between the two. Paramount in our decision to remand is the fact that N.J.S.A. 2C:43-6-5.2(c)(2) has not been the subject of a reported decision heretofore, and defendant in this case did not file opposition to the State's appeal. We therefore conclude that it is appropriate to remand the matter to the sentencing judge, who also sat on the trial, and permit the parties to fully argue the issues presented in light of the standards we have now expressed.
We remand the matter to the trial judge for reconsideration of the sentence imposed on the official misconduct conviction, and for entry of an amended judgment of conviction reflecting that the tampering conviction was a fourth-degree crime, and entering a judgment of acquittal as to the conspiracy conviction. We do not retain jurisdiction.
NOTES
[1] The indictment and judgment of conviction mistakenly indicated that the tampering charge was a third-degree offense. See N.J.S.A. 2C:28-6 (making tampering with physical evidence a fourth-degree crime).
[2] Defendant did not file a brief in opposition to the State's appeal.
[3] These are part of the appellate record.
[4] The Evers court referenced our opinion in State v. E.R., 273 N.J.Super. 262, 641 A.2d 1072 (App.Div.1994), as the only other example of a reported case in which the standard was met. Evers, supra, 175 N.J. at 390, 815 A.2d 432.